UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ZAFAR IQBAL,<br><br>                    Petitioner,<br><br>     v.<br><br>LAURA HERMOSILLO, BRUCE SCOTT, KRISTI NOEM, PAMELA BONDI, U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>                  Respondents. | Case No. 2:26-cv-00171-TMC<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

## I.    INTRODUCTION

Before the Court is petitioner Zafar Iqbal's petition for writ of habeas corpus. Dkt. 1. Detained by Respondents in the Northwest ICE Processing Center ("NWIPC"), Iqbal challenges the constitutionality of his re-detention without a pre-deprivation hearing. For the following reasons, the Court GRANTS his petition for writ of habeas corpus.

## II.    BACKGROUND

Iqbal, a citizen of Pakistan, entered the United States around June 12, 2023. Dkt. 10-1 at 3. He was apprehended by Border Patrol agents on the same day, deemed inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), and provided a Notice to Appear. *Id.* On June 27, 2023, Iqbal was released on an order of recognizance "[i]n accordance with [8 U.S.C.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

§ 1226.]" Dkt. 10-3 at 2. Upon his release, Iqbal traveled to Vancouver, Washington state to reside with his sister and brother-in-law. Dkt. 2 ¶ 5. Iqbal would ultimately file two pending applications with U.S. Citizenship & Immigration Services (USCIS)—an asylum application and a U nonimmigrant application. Dkt. 2 ¶ 2.

At some point in 2023, U.S. Immigration & Customs Enforcement (ICE) enrolled Iqbal in the Alternatives to Detention ("ATD") program. *See* Dkt. 9 ¶ 5; Dkt. 10-2 at 3.[1] One of the conditions of this program was that Iqbal wear a GPS ankle monitor. Dkt. 9 ¶ 5. According to a declaration from ICE deportation officer Yralees Melendez, the contractor providing the ankle monitoring services to Respondents reported that Iqbal: (1) tampered with his ankle monitor on September 3, 2024; and (2) failed to complete his biometric check-ins on April 29, May 20, June 17, and July 8, 2025. *Id.* ¶ 7–8. There is no evidence that ICE took any action at or near the time of these alleged violations. To the contrary, Iqbal's immigration attorney submitted a declaration stating that "[s]ince his initial release, [Iqbal's] reporting requirements have decreased due to his stringent compliance." Dkt. 2 at 4 ¶ 6.

On January 3, 2026, Iqbal was terminated from the ATD program and apprehended by ICE agents at his home in Vancouver. Dkt. 10-2 at 3. Iqbal was transferred to NWIPC and has remained there since. Dkt. 9 ¶ 10.

The instant petition was filed on January 16, 2026. Dkt. 1. Respondents filed their response on January 30, 2026. Dkt. 8. Iqbal replied on February 1, 2026. Dkt. 11.

---

[1] Federal Respondents provide conflicting evidence about Iqbal's enrollment in the Alternatives to Detention Program. The declaration from ICE deportation officer Yralees Melendez states that Iqbal was enrolled in the program at the same time he was released on his own recognizance, on June 28, 2023. Dkt. 9 ¶ 5. But none of the forms associated with Iqbal's release mention an ankle monitor or any form of location monitoring. *See* Dkt. 2 at 7–10. The form I-213 from Iqbal's arrest in January 2026, in contrast, states that Iqbal was not enrolled in the program until September 26, 2023. Dkt. 10-2 at 3.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

### III.    LEGAL STANDARDS

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

### IV.    DISCUSSION

Iqbal argues that his re-detention without a pre-deprivation hearing violates his constitutional right to due process, requiring his release. Dkt. 1 ¶ 48–50. In response, Respondents make two arguments. First, they contend that Iqbal is lawfully detained under the mandatory detention provisions of 8 U.S.C. § 1225(b). Dkt. 8 at 4. Second, they claim that Iqbal's re-detention does not require a pre-deprivation hearing to comply with due process. Dkt. 8 at 6. The Court will consider each of Respondents' arguments in turn.

#### A.    Iqbal is subject to discretionary detention under 8 U.S.C. § 1226.

Respondents claim that due process does not require a pre-deprivation hearing because Iqbal is "subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)." Dkt. 8 at 4–5. In response, Iqbal argues that the question before the Court is "not whether ICE has authority to detain individuals under 8 U.S.C. § 1225(b), but rather if ICE complied with due process in re-detaining" him." Dkt. 11 at 2.

Respondents' argument is unpersuasive. Iqbal was and is subject to Section 1226 and not 1225. "[W]hen a petitioner was apprehended on arrival, if he has been 'treated by [the government] as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply." *Bello Chacon v. Hermosillo*, No. 2:25-CV-02299-TMC, 2025 WL 3562666, at *2 (W.D. Wash. Dec. 12, 2025) (quoting

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 3

*Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)).

Here, Respondents have consistently treated Iqbal as one subject to discretionary detention under

Section 1226. Iqbal was released on an order of recognizance "[i]n accordance with [8 U.S.C.

§ 1226]." Dkt. 10-3 at 2. The warrant for Iqbal's January 2026 arrest was made "pursuant to

section [1226]." Dkt. 10-4 at 2. Iqbal's notice of custody determination was made "pursuant to

the authority contained in section [1226]." Dkt. 10-5 at 2. Accordingly, Section 1226 applies to

Iqbal, and his detention is discretionary.

**B.      Iqbal's re-detention without a pre-deprivation hearing violates his right to procedural due process.**

Both Iqbal and Respondents analyze Iqbal's due process claim under the three-factor test

from *Mathews v. Eldridge*, 424 U.S. 319 (1976). Dkt. 1 at 3; Dkt. 8 at 6. Courts in the Ninth

Circuit have considered procedural due process claims like Iqbal's under *Mathews*. *Ramirez*

*Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025). *Mathews* requires courts to

consider these three factors when determining whether a government action complies with

procedural due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 334–35. The Court will analyze each factor in turn.

**1.      Iqbal has a protected interest in his liberty.**

The first factor weighs in Iqbal's favor as the private interest affected is his liberty.

"Freedom from imprisonment—from government custody, detention, or other forms of physical

restraint— lies at the heart of the liberty" protected by the Fifth Amendment's Due Process

Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 4

### 2.    There is a substantial risk of erroneous deprivation of Iqbal's liberty interest without a pre-deprivation hearing.

Respondents make two arguments as to why the risk of erroneous deprivation of Iqbal's liberty did not require a pre-deprivation hearing.

One of Respondents' arguments is that a pre-deprivation hearing "would be futile as his detention is based on his mandatory detention [pursuant to 8 U.S.C. § 1225(b)]." Dkt. 8 at 8. As discussed above, this argument fails because Iqbal is not subject to mandatory detention. *See supra* Section IV.A.

Respondents also argue that Iqbal's re-detention qualifies as a "special case" not requiring a pre-deprivation hearing "due to his ATD violations." Dkt. 8 at 7. More specifically, they argue that this is a "special case" because a pre-deprivation hearing would be "impracticable and/or would have motivated [Iqbal's] flight." Dkt. 8 at 8 (quoting *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025)). In response, Iqbal contends that the alleged ATD violations were a pretextual reason for his detention because of the large gap in time—179 days—between his last "infraction" and his arrest. Dkt. 11 at 4. Iqbal has also presented evidence that during that time, rather than arrest him, ICE reduced his reporting obligations. Dkt. 2 at 4 ¶ 6. The timeline and the lack of description of the alleged ATD violations on his arrest warrant, Iqbal further argues, suggests that "ICE decided to re-detain [him] first, then searched for a reason to justify his" re-detention. Dkt. 11 at 4–5.

The Court finds that Iqbal's re-detention is not a "special case" precluding the need for a pre-deprivation hearing. It is undisputed that Iqbal was apprehended at the same address he had long reported to Respondents. Dkt. 2 ¶ 8–10. It is also undisputed that Respondents apprehended Iqbal nearly six months after his most recent alleged ATD violation. Dkt. 9 ¶ 7–8; Dkt. 10-2 at 3.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 5

Case 2:26-cv-00171-TMC   Document 12   Filed 02/26/26   Page 6 of 7

Respondents have not provided any evidence to contradict the declaration from Iqbal's attorney that, before his arrest, ICE had decreased Iqbal's reporting requirements because of his ongoing compliance. Dkt. 2 at 4 ¶ 6. Respondents' claim that Iqbal's risk of flight precludes the need for a pre-deprivation hearing is incompatible with their lethargic and contradictory response to Iqbal's alleged ATD violations. Given this delay and the lack of contemporaneous evidence that Iqbal's alleged ATD violations were the real reason for his apprehension, the Court agrees that the preponderance of the evidence shows the violations were a pretext to arrest him. This only underscores the risk of erroneous deprivation of liberty when an asylum applicant released on bond is re-detained without a hearing—even now, *post*-deprivation, Respondents cannot establish a material change in flight risk that would justify Iqbal's arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017). Accordingly, the second factor favors Iqbal.

### 3. Respondents' interest in Iqbal's re-detention without a pre-deprivation hearing is minimal.

Respondents are correct that the government has a strong interest in enforcing immigration laws. Dkt. 8 at 8 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022)). However, Respondents provide no explanation as to how providing Iqbal a pre-deprivation hearing would interfere with those interests or place any significant administrative or financial burden on the government. *See Ramirez Tesara*, 800 F. Supp. 3d at 1137. To the contrary, the financial and administrative burden of detaining someone who poses no real risk of flight is far greater than the cost of providing a hearing beforehand. And as evidenced by the ease with which Iqbal was apprehended, if Respondents wished to apprehend him at any point, they "ha[ve] the power to take steps toward doing so; but [their] interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Accordingly, the third factor favors Iqbal.

## V.    CONCLUSION

As courts in this district have repeatedly found in similar circumstances, the Court finds all three *Mathews* factors favor Iqbal. Therefore, his re-detention without a pre-deprivation hearing violated his right to due process, and he is in custody in violation of the Fifth Amendment. Release is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008).

For the reasons explained above, the Court orders as follows:

1.    The petition for writ of habeas corpus (Dkt. 1) is GRANTED.

2.    Within ONE day of this Order, Respondents shall release petitioner Zafar Iqbal on the conditions of his previous order of supervision.

3.    Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 26th day of February, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 7